**Exhibit C**

**(Sale Order)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Velti Inc., *et al.*,[1] | ) | Case No. _____ |
|  | ) |  |
| Debtors. | ) | Joint Administration Pending |
|  | ) |  |

**ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE MMBU DEBTORS' ASSETS, INCLUDING AS RELATED TO THE MMBU BUSINESS PURSUANT TO SUCCESSFUL BIDDER'S ASSET PURCHASE AGREEMENT FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (C) <u>GRANTING RELATED RELIEF</u>**

Upon consideration of the motion (the "<u>Motion</u>")[2] dated November [_], 2013 of

the above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>") for, among other things,

entry of an order (the "<u>Order</u>") (i) approving the sale to the Buyer (as defined below) of

substantially all of the MMBU Debtors' (as defined below) assets described in the Asset

Purchase Agreement referenced below (the "<u>Sale</u>") free and clear of all Encumbrances, except to

the extent set forth in the Asset Purchase Agreement and the assumption of the US Assumed

Liabilities, pursuant to Sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C.

§§ 101 et seq. (as amended, the "<u>Bankruptcy Code</u>"), and Rules 2002, 6004 and 6006 of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (ii) authorizing the

---

[1]     The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Velti, Inc. (4475), Air2Web, Inc. (5572), Air2Web Interactive, Inc. (2364), Velti North America, Inc. (8900), Velti North America Holdings, Inc. (3953) and Velti US Holdings, Inc. (8299).  The mailing address of each of the Debtors, solely for purposes of notices and communications, is Spear Tower, 1 Market Street Suite 1400, San Francisco, California 94105.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Asset Purchase Agreement (as defined herein), as applicable.

assumption and assignment of the Assumed Contracts and the Assumed Leases identified by the

MMBU Debtors and more fully described in the Asset Purchase Agreement dated as of

November [__], 2013 (as attached hereto as **Exhibit A**, as amended from time to time, including

all schedules, exhibits and ancillary documents, the "Asset Purchase Agreement") by and among

GSO MMBU Acquisition LLC (and any designee thereof, the "Buyer") and Debtors Air2Web,

Inc., Air2Web Interactive, Inc., and Velti Inc. (together with Air2Web, Inc. and Air2Web

Interactive, Inc., the "MMBU Debtors"), and non-Debtors Velti Netherlands B.V., Mobile

Interactive Group Limited, Velti Dr Limited, Velti plc and Velti Mobile Platforms Limited, and

(iii) granting certain related relief; and the Court having held a hearing on _____ __, 2013 (the

"Sale Hearing") to approve the Sale; and the Court having reviewed and considered (a) the

Motion, (b) the declarations filed in support of the Motion, (c) the objections to the Motion,

(d) all responses to any objections and replies in further support of the Motion and (e) the

arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and it

appearing that the relief requested in the Motion is in the best interests of the Debtors, their

estates and creditors and other parties in interest; and upon the record of the Sale Hearing and the

Chapter 11 Cases; and after due deliberation thereon; and good cause appearing therefore, it is

hereby

**FOUND AND DETERMINED THAT**:[3]

A.    **Jurisdiction and Venue**.  The court has jurisdiction over the Motion

pursuant to 28 U.S.C. § 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C.

§ 157(b).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408

and 1409.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

B.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion are Sections 105, 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 6006.

C.    **Petition Date**.  On November 4, 2013 (the "Petition Date"), each Debtor commenced a case by filing a petition for relief under Chapter 11 of the Bankruptcy Code.

D.    **Entry of Bidding Procedures Order**.  On November [__], 2013, this Court entered an order (the "Bidding Procedures Order") approving bidding procedures (the "Bidding Procedures") in connection with the sale of substantially all of the MMBU Debtors' assets, including as related to the MMBU business; (b) approving stalking horse purchaser and expense reimbursement; (c) scheduling the related auction and hearing to consider approval of sale; (d) approving procedures related to the assumption of certain executory contracts and unexpired leases (the "Assumption and Assignment Procedures"); (e) approving the form and manner of notice thereof; and (f) granting related relief.

E.    **Compliance with Bidding Procedures Order**.  As demonstrated by (i) the Declaration of [_____], filed on _____ __, 2013, (ii) the Declaration of [_____], filed on _____ __, 2013, (iii) the testimony and other evidence proffered or adduced at the Sale Hearing, and (iv) the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Purchased Assets and conducted the sale process in compliance with the Bidding Procedures Order, and the Auction was duly noticed and conducted in a non-collusive, fair and good faith manner.  The MMBU Debtors and their professionals have actively marketed the Purchased Assets, including the US Purchased Assets, and conducted the sale process in compliance with the Bidding Procedures Order, and have afforded potential purchasers a full and fair opportunity to make higher and better offers.  The Buyer, the DIP

Lenders and the Credit Agreement lenders each acted in compliance with the terms of the Bidding Procedures. In accordance with the Bidding Procedures, the MMBU Debtors determined that the bid submitted by the Buyer and memorialized by the Asset Purchase Agreement is the Successful Bid (as defined in the Bidding Procedures).

F.    **Notice**. As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Sale, the Assumption and Assignment Procedures (including the objection deadline with respect to any Cure Amount) and the assumption and assignment of the Assumed Contracts and the Assumed Leases and the Cure Amounts has been provided in accordance with Sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 and in compliance with the Bidding Procedures Order, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Assumed Contracts and the Assumed Leases or the Cure Amounts is or shall be required. With respect to entities whose identities are not reasonably ascertained by the MMBU Debtors, publication of the Procedures Notice (as defined in the Motion) in [publication] on _____ __, 2013, was sufficient and reasonably calculated under the circumstances to reach such entities.

G.    **Corporate Authority**. Each MMBU Debtor (i) has full legal power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the sale of the US Purchased Assets by the MMBU Debtors has been duly and validly authorized by all necessary corporate action of each of the MMBU Debtors, (ii) has all of the legal power and authority necessary to consummate the transactions contemplated by the

WEST\245042906.2

Asset Purchase Agreement, (iii) has taken all legal action and formalities necessary to authorize and approve the Asset Purchase Agreement and the consummation by the MMBU Debtors of the transactions contemplated thereby, including, without limitation, as required by their respective organizational documents and (iv) no government, regulatory or other consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the MMBU Debtors to enter into the Asset Purchase Agreement and perform their obligations thereunder, including consummate the Sale.

H.     **Opportunity to Object**.  A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including:  : (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Commitee; (c) counsel to HSBC; (d) counsel to GSO; (e) counsel to the Buyer, (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; and (i) those parties requesting notice pursuant to Bankruptcy Rule 2002. in these Chapter 11 Cases.

I.     **Sale in Best Interest**.  Consummation of the Sale at this time is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

J.     **Business Justification**.  Sound business reasons exist for the Sale.  Entry into the Asset Purchase Agreement, and the consummation of the transactions contemplated thereby, including the Sale and the assumption and assignment of the Assumed Contracts and the Assumed Leases, constitutes each MMBU Debtor's exercise of sound business judgment and such acts are in the best interests of each MMBU Debtor, its estate, and all parties in interest. The Court finds that each MMBU Debtor has articulated good and sufficient business reasons justifying the Sale.  Such business reasons include, but are not limited to, the following:  (i) the

6

Sale is the only viable alternative to the immediate liquidation of the MMBU Debtors; (ii) the

Asset Purchase Agreement constitutes the highest and best offer for the US Purchased Assets;

(iii) the Asset Purchase Agreement and the closing thereon will present the best opportunity to

realize the value of the US Purchased Assets on a going concern basis and avoid decline and

devaluation of the US Purchased Assets and preserve employment for over 350 employees

worldwide; (iv) unless the Sale and all of the other transactions contemplated by the Asset

Purchase Agreement are concluded expeditiously, as provided for in the Motion and pursuant to

the Asset Purchase Agreement, recoveries to creditors may be diminished; and (v) any plan

would not have likely yielded as favorable an economic result.

      K.      The terms and conditions of the Asset Purchase Agreement, including,

without limitation, the consideration to be realized by the MMBU Debtors, are fair and

reasonable.  Approval of the Motion, the Asset Purchase Agreement, and the transactions

contemplated thereby, including, without limitation, the Sale and the assumption and assignment

of the Assumed Contracts and the Assumed Leases, is in the best interests of the  MMBU

Debtors, their estates and creditors, and all other parties in interest.

      L.      **Arm's Length Sale**.  The Asset Purchase Agreement was negotiated,

proposed and entered into by the MMBU Debtors and the Buyer without collusion, in good faith,

and from arm's length bargaining positions.  Neither the MMBU Debtors nor the Buyer have

engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided

under 11 U.S.C. § 363(n).  Specifically, the Buyer has not acted in a collusive manner with any

person and the purchase price was not controlled by any agreement among bidders.  The Buyer is

not an "insider" of the Debtors or any affiliate of the Debtors as defined in Section 101(31) of the

Bankruptcy Code.

M.    **Good Faith Purchaser**.  The Buyer is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law.  Specifically:  (i) the Buyer recognized that the MMBU Debtors were free to deal with any other party interested in purchasing the US Purchased Assets; (ii) the Buyer complied in all respects with the provisions in the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer, the Debtors or any non-Debtor affiliates of the Debtors; (vi) the negotiation and execution of the Asset Purchase Agreement was at arm's-length and in good faith, and at all times each of the Buyer and the MMBU Debtors were represented by competent counsel and financial advisors of their choosing; (vii) the Buyer did not in any way induce or cause the chapter 11 filing of the MMBU Debtors; rather the MMBU Debtors and their affiliates solicited the Buyer to participate in the Sale and effectuate it through the Chapter 11 Cases; and (viii) the Buyer has not acted in a collusive manner with any person.  The Buyer will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Asset Purchase Agreement.

N.    **Credit Bid of DIP Claims**.  The DIP Lenders, which are also the lenders under the Credit Agreement (the "Prepetition Lenders"), are secured creditors of the Debtors, holding valid, binding, enforceable and perfected security interests in, on and against the Debtors, their estates and property of the estates, arising in connection with the DIP Financing Agreement.  The DIP Lenders[4] hold an allowed secured claim in the aggregate amount of not

less than $[_____] against the Debtors (the "<u>Allowed DIP Claim</u>"), which claim is not

subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the

Bankruptcy Code or applicable non-bankruptcy law, plus such additional amounts to the extent

allowed or provided under the DIP Order (together with the Allowed DIP Claim, the "<u>Allowed</u>

<u>DIP Secured Claim</u>"), and pursuant to the Bidding Procedures and the DIP Order were

authorized to credit bid any or all of such Allowed DIP Secured Claim at the Auction.

      O.      Pursuant to its agreement under the Asset Purchase Agreement, Sections

363(b) and 363(k) of the Bankruptcy Code and the DIP Order, the Buyer credit bid $[__] million

of the Allowed DIP Secured Claim, which credit bid was a valid and proper offer pursuant to the

Bidding Procedures Order (the "<u>Credit Bid of DIP Claims</u>" and together with the Credit Bid of

Prepetition Claims, the "<u>Credit Bid</u>").

      P.      **<u>Credit Bid of Prepetition Claims</u>**.  The Prepetition Lenders are secured

creditors of the Debtors, holding valid, binding, enforceable and perfected security interests in,

on and against the Debtors (including the MMBU Debtors), their estates and property of the

estates, arising in connection with the Prepetition Credit Agreement.  The Prepetition Lenders

hold an allowed secured claim in the aggregate amount of not less than $[_____] against

the Debtors (the "<u>Allowed Prepetition Claim</u>"),[5] which claim is not subject to avoidance,

reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or

applicable non-bankruptcy law, plus such additional amounts to the extent allowed or provided

under the order approving the DIP Motion (the "<u>DIP Order</u>"), including accrued post-petition

interest and any adequate protection claims (the "<u>Allowed Additional Postpetition Claim</u>" and

together with the Allowed Prepetition Claim, the "<u>Allowed Prepetition Secured Claim</u>"), and

---

[5]      With respect to the foreign Loan Parties (as defined in the  Credit Agreement), the aggregate amount
outstanding under the Credit Agreement is not less than remains $[_____].

pursuant to the Bidding Procedures and the DIP Order were authorized to credit bid any or all of such Allowed Prepetition Secured Claim at the Auction.

Q.    Pursuant to its agreement under the Asset Purchase Agreement, Sections 363(b) and 363(k) of the Bankruptcy Code and the DIP Order, the Buyer credit bid $[__] million of the Allowed Prepetition Claim, which credit bid was a valid and proper offer pursuant to the Bidding Procedures Order (the "Credit Bid of Prepetition Claims").

R.    **Free and Clear**.  The MMBU Debtors may sell the US Purchased Assets free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities) because, with respect to each creditor asserting an Encumbrance, one or more of the standards set forth in Sections 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to Section 363(f)(2) of the Bankruptcy Code.  Those holders of Encumbrances who did object fall within one or more of the other subsections of Section 363(f) of the Bankruptcy Code.

S.    The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated hereby, including, without limitation, the Sale and the assumption and assignment of the Assumed Contracts and the Assumed Leases, (i) if the transfer of the US Purchased Assets were not free and clear of all Encumbrances and other interests of any kind or nature whatsoever (subject only to the Permitted Encumbrances and the US Assumed Liabilities), including, without limitation, rights or claims based on any taxes or successor or transferee liability or (ii) if the Buyer would, or in the future could, be liable for any such Encumbrances and other interests of any kind or nature whatsoever (subject only to the Permitted Encumbrances and the US Assumed Liabilities).  The Buyer will not consummate the

10

transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assumed Contracts and the Assumed Leases, unless this Court expressly orders that neither the Buyer, its Affiliates, its present or contemplated members or shareholders, or the US Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Encumbrances and other interests of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities).

T.    Not transferring the US Purchased Assets free and clear of all Encumbrances and other interests of any kind or nature whatsoever (subject only to the Permitted Encumbrances and the US Assumed Liabilities) including, without limitation, rights or claims based on any taxes, successor or transferee liability, intercompany claims or otherwise, would adversely impact the MMBU Debtors' efforts to maximize the value of their estates and the value of their affiliates and preserve hundreds of jobs worldwide, and the transfer of the US Purchased Assets other than pursuant to a transfer that is free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities) would be of substantially less benefit to the MMBU Debtors' estates.

U.    Without limiting the generality of the foregoing, neither the Buyer, its respective Affiliates, its respective present nor contemplated members nor shareholders, nor the US Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Encumbrance and other interests of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities), that the MMBU Debtors incur in

connection with the consummation of the transactions contemplated by the Asset Purchase

Agreement, including, without limitation, the Sale and the assumption and assignment of the

Assumed Contracts and the Assumed Leases.

V.      **Assumption of Executory Contracts and Unexpired Leases**.  Without in

any way limiting any lease or contract counterparty's rights under Section 365 of the Bankruptcy

Code, the (i) transfer of the US Purchased Assets to the Buyer and (ii) assignment to the Buyer of

the Assumed Contracts and the Assumed Leases, will not subject the Buyer to any liability

whatsoever prior to the Closing Date (defined below) or by reason of such transfer under the

laws of the United States, any state, territory, or possession thereof, or the District of Columbia,

any laws of any foreign jurisdiction based, in whole or in part, directly or indirectly, on any

theory of law or equity, including, without limitation, any theory of equitable law, including,

without limitation, any theory of antitrust, successor or transferee liability.  The MMBU Debtors

have demonstrated that it is an exercise of their sound business judgment to assume and assign

the Assumed Contracts and the Assumed Leases to the Buyer in connection with the

consummation of the Sale, and the assumption and assignment of the Assumed Contracts and the

Assumed Leases is the best interests of the MMBU Debtors, their estates, and their creditors.

The Assumed Contracts and the Assumed Leases being assigned to the Buyer are an integral part

of the US Purchased Assets being purchased by the Buyer and, accordingly, such assumption and

assignment of Assumed Contracts and the Assumed Leases is reasonable, enhances the value of

the MMBU Debtors' estates, and does not constitute unfair discrimination.

W.      **Cure/Adequate Assurance**.  The Buyer has (i) cured, or have provided

adequate assurance of cure upon Closing, of any default existing prior to the date of Closing

under any of the Assumed Contracts and the Assumed Leases, within the meaning of Section

WEST\245042906.2

365(b)(1)(A) of the Bankruptcy Code, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date of Closing under any of the Assumed Contracts and the Assumed Leases within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code.  The Buyer has provided or will provide adequate assurance of future performance of and under the Assumed Contracts and the Assumed Leases within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code.

X.      **Prompt Consummation**.  The sale of the US Purchased Assets must be approved and consummated promptly in order to preserve the value of the US Purchased Assets. Therefore, time is of the essence in consummating the Sale, and the MMBU Debtors and the Buyer intend to close the Sale as soon as reasonably practicable and subject to the satisfaction of the conditions set forth in the Asset Purchase Agreement.

Y.      The MMBU Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assumed Contracts and the Assumed Leases, prior to, and outside of, a chapter 11 plan of reorganization.  Confirmation of a chapter 11 plan is not feasible and will not result in any greater distribution to creditors, and the Debtors' estates will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis.  In addition, consummation of the Sale will prevent the continuing accrual of interest and fees to the DIP Lenders.

Z.      **No Fraudulent Transfer**.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of

Columbia or the laws of any foreign jurisdiction.  The Buyer is not a mere continuation, and are not holding themselves out as a mere continuation, of any of the Debtors or their respective estates or non-Debtor affiliates and there is no continuity between the Buyer and the Debtors. The Sale does not amount to a consolidation, merger or *de facto* merger of the Buyer and any of the Debtors.

AA.    The consideration provided by the Buyer for the US Purchased Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the US Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act) or the laws of any foreign jurisdiction.

BB.    **<u>Buyer Not an Insider and No Successor Liability</u>**.  Immediately prior to the Closing Date, the Buyer was not an "insider" or "affiliate" of the Debtors or their non-Debtor affiliates, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Buyer and the Debtors and their non-Debtor affiliates.  The transfer of the US Purchased Assets and the assumption of the US Assumed Liabilities (including any individual elements of the Sale) to the Buyer, except as otherwise set forth in the Asset Purchase Agreement, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia or the laws of any foreign

jurisdiction, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee or vicarious liability. Pursuant to the Asset Purchase Agreement, the Buyer is not purchasing all of the MMBU Debtors' assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities or any of the assets of any Debtor that is not a MMBU Debtor, and the Buyer is not holding itself out to the public as a continuation of the Debtors. The Sale does not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates. There is not substantial continuity between the Buyer and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer. The Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtors or the Debtors' estates.

CC.     **Legal, Valid Transfer**. The transfer of the US Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the US Purchased Assets, and will vest the Buyer with all right, title, and interest of the MMBU Debtors to the US Purchased Assets free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities), as set forth in the Asset Purchase Agreement. The US Purchased Assets constitute property of the MMBU Debtors' estates and good title is vested in the Debtors' estate within the meaning of Section 541(a) of the Bankruptcy Code. The MMBU Debtors are the sole and rightful owners of the US Purchased Assets, and no other person has any ownership right, title, or interests therein.

DD.     **Asset Purchase Agreement Not Modified**. The terms of the Asset Purchase Agreement, including any amendments, supplements, and modifications thereto, are

fair and reasonable in all respects and the terms of the Order shall not modify the terms of the Asset Purchase Agreement.

EE. **Not a Sub Rosa Plan**.  The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

FF. **Legal and Factual Bases**.  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

It is therefore **ORDERED, ADJUDGED, AND DECREED THAT**:

**General Provisions**

1. The Motion is GRANTED and APPROVED in all respects.

2. All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

**Approval of the Sale of the US Purchased Assets**

3. The Asset Purchase Agreement, including any amendments, supplements and modifications thereto, and all of the terms and conditions therein, is hereby approved,

4. Pursuant to Section 363(b) of the Bankruptcy Code, the sale of the US Purchased Assets to the Buyer free and clear of all obligations, Encumbrances and other interests of any kind or nature whatsoever (except Permitted Encumbrances and the US Assumed Liabilities), and the transactions contemplated thereby is approved in all respects.

**Sale and Transfer of US Purchased Assets**

   5. Pursuant to Section 363(b) of the Bankruptcy Code, the MMBU Debtors are hereby authorized and directed to sell the US Purchased Assets to the Buyer and consummate the Sale in accordance with, and subject to the terms and conditions of, the Asset Purchase Agreement, and to transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Asset Purchase Agreement, and are further authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, including, without limitation, the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by the Buyer for the purposes of assigning, transferring, granting, conveying and conferring to the Buyer or reducing to possession, the US Purchased Assets, or as may be necessary or appropriate to the performance of the MMBU Debtors' obligations as contemplated by the Asset Purchase Agreement.

   6. Pursuant to Sections 363(b) and (f) of the Bankruptcy Code, the US Purchased Assets shall be transferred to the Buyer upon consummation of the Asset Purchase Agreement (the "Closing Date") free and clear of all Encumbrances and other interests of any kind or nature whatsoever (except for Permitted Encumbrances and the US Assumed Liabilities), including without limitation, rights or claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code) based on any taxes, intercompany claims or successor or transferee liability, including, without limitation all claims arising in any way in connection with any agreements, acts, or failures to act, of any of

the Debtors or any of the Debtors' predecessors or non-Debtor affiliates, whether known or unknown, contingent or otherwise, whether arising before or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, without limitation, claims otherwise arising under federal or state or non-U.S. tax laws or doctrines of successor or transferee liability.

7.      Following the Closing, the MMBU Debtors or the Buyer and their respective Affiliates are authorized and directed to execute and file a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, Encumbrances and other interests of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities) in the US Purchased Assets.  On the Closing Date, this Order will be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the US Purchased Assets or a bill (or bills) of sale transferring good and marketable title in such US Purchased Assets to the Buyer.  On the Closing Date, this Order also shall be construed, and constitute for any and all purposes, a complete and general assignment of all right, title and interest of the MMBU Debtors and each of their bankruptcy estates to the Buyer in the Assumed Contracts and the Assumed Leases.  Each and every federal, state,  local and foreign governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

8.      All entities who are presently, or on the Closing Date may be, in possession of some or all of the US Purchased Assets are hereby directed to surrender possession of the US Purchased Assets to the Buyer on the Closing Date.

WEST\245042906.2

9.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the MMBU Debtors to transfer the US Purchased Assets to the Buyer in accordance with the Asset Purchase Agreement and this Order; provided, however, that the foregoing restriction shall not prevent any party from appealing this Order in accordance with applicable law or opposing any appeal of this Order, or from enforcing its rights under Section 365 of the Bankruptcy Code.

10.      Except as expressly permitted by the Asset Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, and other creditors, holding Encumbrances and other interests of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities) against or in a Debtor or the US Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the US Purchased Assets or the operation of the US Purchased Assets before the Closing Date, or the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assumed Contracts and the Assumed Leases, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its respective successors and assigns and Affiliates, their respective property and the US Purchased Assets, such persons' or entities' Encumbrances or other interests, provided that nothing herein shall impair or otherwise affect any right of a lease or contract counterparty under Section 365 of the Bankruptcy Code, or under any Assumed Contract or Assumed Lease, or relieve the Buyer of any US Assumed Liability.

11. On the Closing Date of the Sale, each of the Debtors' creditors and affiliates is authorized and directed to execute such documents and take all other actions as may be necessary to release its Encumbrances on the US Purchased Assets, if any, as such Encumbrances may have been recorded or otherwise exist.

12. To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license or similar grant relating to the operation of the US Purchased Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assumed Contracts and the Assumed Leases.

13. Subject to the terms and conditions of this Order, the transfer of the US Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the US Purchased Assets, and shall vest the Buyer with all right, title, and interest of the Debtors in and to the US Purchased Assets free and clear of all Encumbrances of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities).

**No Successor Liability**

14. The Buyer is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Buyer shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, other than the US Assumed Liabilities, with respect to the US Purchased Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability except for the assumption of the Asset Purchase Agreement

WEST\245042906.2

and any documents related thereto.  Except to the extent the Buyer assumes US Assumed

Liabilities and the Buyer is ultimately permitted to assume the Assumed Contracts and the

Assumed Leases pursuant to the Asset Purchase Agreement, neither the purchase of the US

Purchased Assets by the Buyer nor the fact that the Buyer is using any of the US Purchased

Assets previously operated by any Debtor will cause the Buyer to be deemed a successor in any

respect to the Debtors' businesses or incur any liability derived therefrom within the meaning of

any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment,

environmental, or other law, rule or regulation (including, without limitation, filing requirements

under any such laws, rules or regulations), or under any products liability law or doctrine with

respect to the Debtors' liability under such law, rule or regulation or doctrine.

15.    The Buyer has given substantial consideration under the Asset Purchase

Agreement, which consideration shall constitute valid and valuable consideration for the releases

of any potential claims of successor liability of the Buyer and which shall be deemed to have

been given in favor of the Buyer by all holders of Encumbrances and other interests of any kind

or nature whatsoever (except for Permitted Encumbrances and the US Assumed Liabilities) in or

against the Debtors, or the US Purchased Assets.  Without limiting the Buyer's obligation to pay

and satisfy the US Assumed Liabilities, upon consummation of the Sale, the Buyer shall not be

deemed to (a) be the successor to the Debtors, (b) have, *de facto* or otherwise, merged with or

into the Debtors, or (c) be a mere continuation, alter ego or substantial continuation of the

Debtors.

16.    Except to the extent the Buyer otherwise specifically agreed in the Asset

Purchase Agreement or this Order (including the Buyer's obligation to satisfy the US Assumed

Liabilities), the Buyer shall not have any liability, responsibility or obligation for any claims,

liabilities or other obligations of the Debtors or their estates, including without limitation, any claims, liabilities or other obligations related to the US Purchased Assets prior to Closing Date. Under no circumstances shall the Buyer be deemed a successor of or to the Debtors for any Encumbrances and other interests of any kind or nature whatsoever (except for Permitted Encumbrances and the US Assumed Liabilities) against, in or to the Debtors or the US Purchased Assets. For the purposes of paragraphs 14 through 16 of this Order, all references to the Buyer shall include the Buyer's Affiliates, subsidiaries and shareholders.

**Good Faith**

17.    The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Sale shall not affect the validity of the sale of the US Purchased Assets to the Buyer. The Buyer is a purchaser in good faith of the US Purchased Assets, and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

18.    As a good faith purchaser of the US Purchased Assets, the Buyer has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the US Purchased Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to Section 363(n) of the Bankruptcy Code.

19.     The Buyer, the DIP Lenders and the Prepetition Lenders and their Affiliates, subsidiaries and shareholders are released from any liability related to or arising from the submission of the Credit Bid.

**Assumption and Assignment of Assumed Contracts and the Assumed Leases**

20.     Pursuant to Sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale, the Debtors' assumption and assignment to the Buyer, and the Buyer's assumption on the terms set forth in the Asset Purchase Agreement, of the Assumed Contracts and the Assumed Leases is hereby approved, and the requirements of Section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied, or shall be satisfied.

21.     The Debtors are hereby authorized and directed in accordance with Sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, effective upon the Closing Date of the Sale, the Assumed Contracts and the Assumed Leases free and clear of all Encumbrances of any kind or nature whatsoever (except for Permitted Encumbrances and the US Assumed Liabilities) and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts and the Assumed Leases to the Buyer.  For the avoidance of doubt, all unexpired leases constituting Assumed Contracts and the Assumed Leases shall be assumed by the Debtors prior to the expiration of the applicable period under Section 365(d)(4) of the Bankruptcy Code and assigned on the Closing Date to the Buyer as set forth on **Exhibit B** hereto.

22.     The Assumed Contracts and the Assumed Leases shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assumed Contracts or Assumed

23

Leases (including those of the type described in Sections 365(b)(2) and (f) of the Bankruptcy

Code) that prohibits, restricts, or conditions such assignment or transfer and, to the extent

provided by Section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any

further liability with respect to the Assumed Contracts and the Assumed Leases after such

assignment to and assumption by the Buyer, except as provided in the Asset Purchase

Agreement.

   23. All defaults or other obligations of the Debtors under the Assumed

Contracts and the Assumed Leases arising or accruing prior to the Closing Date (without giving

effect to any acceleration clauses or any default provisions of the kind specified in Section

365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or as soon thereafter as

reasonably practicable.  Until the Closing Date, the Debtors shall timely perform all obligations

under unexpired leases, in accordance with Section 365(d)(3) of the Bankruptcy Code.  The

Buyer may elect to take assignment of certain contracts and leases previously omitted from

Schedule ___ of the Asset Purchase Agreement (the "Previously Omitted Contracts") after the

Closing provided, however, that such Previously Omitted Contracts shall not include any

contracts or leases previously rejected by the Debtors.  Upon designation of such Previously

Omitted Contracts as "Assumed" by the Buyer, the Debtors shall serve a notice on the

counterparties to such Previously Omitted Contracts that identifies the Buyer of the US

Purchased Assets and provides notice that the Debtors are assuming and assigning the Previously

Omitted Contract to the Buyer.  The counterparties will have five (5) Business Days (as defined

in the Asset Purchase Agreement) to object to the Cure Amount or the assumption.  If the

counterparties, the Debtors and the Buyer are unable to reach a consensual resolution with

respect to an objection to the Cure Amount or assumption of a Previously Omitted Contract, the

Debtors will seek an expedited hearing before Bankruptcy Court to determine the Cure Costs and approve the assumption.  If there is no objection, then the Debtors will obtain an order of this Court fixing the Cure Amount and approving the assumption of the Previously Omitted Contract.

24.     Each non-Debtor party to an Assumed Contract or Assumed Lease hereby is forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors or the Buyer or its Affiliates, or the property of any of them, any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts and the Assumed Leases, existing as of the date of the Sale Hearing, or arising by reason of the consummation of transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assumed Contracts and the Assumed Leases, provided that the foregoing shall not impair or otherwise affect in any way any right of a lease or contract counterparty under Section 365 of the Bankruptcy Code.  Any party that may have had the right to consent to the assignment of an Assumed Contract or Assumed Lease is deemed to have consented to such assignment for purposes of Sections 365(c)(1) or 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if such party failed to timely object to the assumption and assignment of such Assumed Contract or Assumed Lease.

25.     To the extent a counterparty to an Assumed Contract or Assumed Lease failed to timely object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely revive any Assumed Contract or Assumed Lease to which it relates.

WEST\245042906.2

26.     Nothing in the Asset Purchase Agreement or in this Order shall constitute an extension of the period set forth in Section 365(d)(4) of the Bankruptcy Code or to authorize the assumption or assumption and assignment of any lease of nonresidential real property after the expiration of such period without the applicable lessor's specific written consent.

**Additional Provisions**

27.     The consideration provided by the Buyer for the US Purchased Assets under the Asset Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia or the laws of any foreign jurisdiction.

28.     Each and every federal, state, local and non-U.S. governmental agency, court or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement. On the Closing Date, the MMBU Debtors and the Buyer are authorized to take such actions as may be necessary to obtain a release of any and all obligations, Encumbrances (other than Permitted Encumbrances and the US Assumed Liabilities) in the US Purchased Assets, if any, and to the extent contemplated hereby and by the Asset Purchase Agreement. This Order (a) shall be effective as a determination that, on the Closing Date, all Encumbrances of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities) existing as to the US Purchased Assets prior to the Closing Date have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of

state, federal, state, local and non-U.S. officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the US Purchased Assets.  Each and every federal, state, local and non-U.S. governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.  The Buyer and the Debtors shall take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated in this paragraph.  All interests of record as of the date of this Order shall be forthwith deemed removed and stricken as against the US Purchased Assets.  All entities described in this paragraph are authorized and specifically directed to strike all such recorded Encumbrances and other interests of any kind or nature whatsoever against the US Purchased Assets (other than the Permitted Encumbrances and the US Assumed Liabilities) from their records, official and otherwise.

29.     If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances and other interests of any kind or nature whatsoever in any of the US Purchased Assets (other than the Permitted Encumbrances and the US Assumed Liabilities) does not deliver to the MMBU Debtors or the Buyer prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all interests and other interests that the person or entity has or may assert with respect to any of the US Purchased Assets, the Debtors and/or the

Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such persons or entity with respect to any of the US Purchased Assets.

30.     The MMBU Debtors will cooperate with the Buyer to ensure that the transaction contemplated in the Asset Purchase Agreement is consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the closing to facilitate such consummation as contemplated by the Asset Purchase Agreement (including, without limitation, adding such specific assets to such documents as may be reasonably requested by the Buyer pursuant to the terms of the Asset Purchase Agreement).

31.     The Buyer shall have no liability or responsibility for any claims (as defined in Section 101(5) of the Bankruptcy Code), liability or other obligation of the Debtors or any of their affiliates arising under or related to the US Purchased Assets other than for the US Assumed Liabilities.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Asset Purchase Agreement, the Buyer shall not be liable for any claims against the Debtors or any of their predecessors or Affiliates other than the US Assumed Liabilities, and the Buyer shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether fixed or contingent, with respect to the Debtors, the US Purchased Assets or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to the operation of the business prior to the Closing Date.

32.     Under no circumstances shall the Buyer be deemed a successor of or to the Debtors for any Encumbrance or other interest of any kind or nature whatsoever (other than

Permitted Encumbrances and the US Assumed Liabilities) against or in the Debtors or the US Purchased Assets of any kind or nature whatsoever.  The sale, transfer, assignment and delivery of the US Purchased Assets and the Assumed Contracts and the Assumed Leases shall not be subject to any Encumbrance or other interest of any kind or nature whatsoever, and Encumbrances and other interests of any kind or nature whatsoever (except the Permitted Encumbrances and the US Assumed Liabilities) shall remain with, and continue to be obligations of, the Debtors.  All persons holding Encumbrances and interest against, on, or in the Debtors or the US Purchased Assets of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities) shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Encumbrances of any kind or nature whatsoever (except the Permitted Encumbrances and the US Assumed Liabilities) against the Buyer, its officers, directors, shareholders and professionals, its property, its successors and assigns, or the US Purchased Assets with respect to any Encumbrance or interest of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities) such person or entity had, has, or may have against or in the Debtors, their estates, officers, directors, shareholders, or the US Purchased Assets.  Following the Closing Date, no holder of an Encumbrance or interest in the Debtors shall interfere with the Buyer's title to or use and enjoyment of the US Purchased Assets and the Assumed Contracts and the Assumed Leases based on or related to such Encumbrance or interest, or any actions that the Debtors may take in their Chapter 11 Cases.  Nothing in this paragraph shall relieve Buyer of their respective obligations to pay and otherwise satisfy the US Assumed Liabilities.

33.	The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their

respective Affiliates, successors and assigns, their estates, and their creditors, the Buyer, and its

Affiliates, successors and assigns, and any affected third parties including, but not limited to, all

persons asserting Encumbrances and other interests of any kind or nature whatsoever (other than

Permitted Encumbrances and the US Assumed Liabilities) on the US Purchased Assets to be sold

to the Buyer pursuant to the Asset Purchase Agreement, notwithstanding any subsequent

appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s)

such terms and provisions likewise shall be binding.

34.     The failure specifically to include any particular provisions of the Asset

Purchase Agreement in this Order shall not diminish or impair the effectiveness of such

provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and

approved in its entirety.

35.     The Asset Purchase Agreement and any related agreements, documents or

other instruments may be modified, amended or supplemented in accordance with the terms

thereof, without further order of the Court.

36.     Nothing contained in any plan of reorganization or liquidation confirmed

in these Chapter 11 Cases or any order of this Court confirming such plans or in any other order

in these Chapter 11 Cases, including any order entered after any conversion of these Chapter 11

Cases to a case under chapter 7 of the Bankruptcy Code, shall alter, conflict with, or derogate

from, the provisions of the Asset Purchase Agreement or the terms of this Order.  The provisions

of this Order and the Asset Purchase Agreement and any actions taken pursuant hereto or thereto

shall survive entry of any order which may be entered confirming or consummating any plan of

reorganization of the Debtors, or which may be entered converting these Chapter 11 Cases from

chapter 11 to chapter 7 of the Bankruptcy Code, and the terms and provisions of the Asset

Purchase Agreement as well as the rights and interests granted pursuant to this Order and the

Asset Purchase Agreement shall continue in these Chapter 11 Cases or any superseding case and

shall be specifically performable and enforceable against and binding upon the Debtors, their

estates and the Buyer and its respective successors and permitted assigns, including any trustee,

responsible officer or other fiduciary hereafter appointed as a legal representative of the Debtors

under chapter 7 or chapter 11 of the Bankruptcy Code.

   37. The provisions of this Order are nonseverable and mutually dependent.

   38. To the extent applicable, the automatic stay pursuant to Section 362 of the

Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without

further order of the Court to allow the Buyer to (a) give the Debtors any notice provided for in

the Asset Purchase Agreement, and (b) take any and all actions permitted by the Asset Purchase

Agreement.

   39. There are no brokers involved in consummating the Sale and no brokers'

commissions are due.

   40. Compliance with the laws of the United States, any state, territory, or

possession thereof, or the District of Columbia, any laws of any foreign jurisdiction relating to

bulk sales and transfers is not necessary or appropriate under the circumstances.

   41. The Debtors and each other person having duties or responsibilities under

the Asset Purchase Agreement or this Order, and their respective agents, representatives, and

attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase

Agreement, to issue, execute, deliver, file and record, as appropriate, the Asset Purchase

Agreement, and any related agreements, and to take any action contemplated by the Asset

Purchase Agreement or this Order, and to issue, execute, deliver, file and record, as appropriate,

such other contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Asset Purchase Agreement and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement and this Order and the transactions contemplated thereby and hereby.

42.     This Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connections therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the US Purchased Assets to the Buyer free and clear of Encumbrances and other interests of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities), or compel the performance of other obligations owed by the Buyer or the Debtors, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Buyer against (i) claims made related to any of the Excluded Liabilities, (ii) any claims of successor or vicarious liability related to the US Purchased Assets or Assumed Contracts and the Assumed Leases, or (iii) any claims of Encumbrances asserted on or in the Debtors or the US Purchased Assets, of any kind or nature whatsoever (other than Permitted Encumbrances and the US Assumed Liabilities).

43.    To the extent that any provision of the Asset Purchase Agreement conflicts

with or is, in any way, inconsistent with any provision of this Order, this Order shall govern and

control.

Dated:  Wilmington, Delaware
          _____ __, 2013

_____
HONORABLE _____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

ASSET PURCHASE AGREEMENT

WEST\245042906.2

## **Exhibit B**

ASSUMED CONTRACTS AND THE ASSUMED LEASES

WEST\245042906.2